GARY M. RESTAINO
United States Attorney
District of Arizona
PATRICK E. CHAPMAN
Arizona State Bar No. 025407
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: Patrick.Chapman@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-00998-01-PHX-SPL |
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |
| Felimon Alvarez-Olivares, | |
| Defendant. | |

The United States recommends that the Court sentence the defendant to eighteen months in prison followed by thirty-six months of supervised release.

### I.　　FACTS

Between March 28, 2022 and May 26, 2022, the defendant and others conspired to straw purchase and sell firearms. (PSR at ¶ 8.) Specifically, the defendant would recruit others to purchase firearms, transfer them to him, and he would later resell them. (*Id*.) The defendant typically provided purchase money and directions for the straw purchases. (*Id*.) The codefendant, Ricardo Hernandez, was one of several people who appeared to be straw purchasing firearms for the defendant. (*Id*.)

In April of 2022, a source notified ATF that the defendant was selling firearms through social media. (PSR at ¶ 10.) The source then communicated with the defendant and arranged to purchase four Glock pistols on April 26, 2022. (*Id*.) On that date, the defendant sold four Glocks to an undercover ATF agent for $4,000. (*Id*. at ¶ 11.) Following

the sale, the defendant and source continued to communicate about purchasing firearms. (*Id*. at ¶ 12.)

On May 3, 2022, the defendant met again with an undercover ATF agent to sell firearms. (*Id*. at ¶ 14.) This time, the defendant sold a Glock pistol and AK-style rifle for $2,800. (*Id*.) During the meeting, the agent asked the defendant if he was making enough money moving firearms, and the defendant replied, "Yes." (*Id*.)

On May 5, 2022, the defendant picked up an FN Scar 17S rifle that he had previously purchased from a Federal Firearms Licensee in Phoenix. (*Id*. at ¶ 15.) Given the previous transactions, ATF and Phoenix Police stopped the defendant after he left the FFL. (*Id*.) When interviewed, the defendant denied purchasing the rifle to resell, but admitted to selling "three or four" ARs in the past through Facebook. (*Id*.) Agents also found searches in the defendant's phone related to obliterating serial numbers. (*Id*.)

In June of 2022, agents attempted to contact the original purchasers of the firearms the defendant sold to them. (*Id*. at ¶ 17–18.) They first spoke with Briana Garcia, who purchased eighteen firearms between March of 2021 and June of 2022, with five recoveries. The five recoveries had "times-to-crimes" between 23 and 233 days, including the firearm that the defendant sold to agents. From the interview, it appeared that Garcia was buying firearms and selling them on Armslist.com. When shown a photographic lineup, Garcia pointed at the defendant's photograph and said he looked familiar. (*Id*. at ¶ 17.) Notably, agents did not locate Garcia's phone number in the defendant's phone. Agents ultimately asked Garcia to cease and desist buying and selling firearms. (*Id*.)

Agents next contacted Brian Pierce, who purchased five firearms between October 2021 and April 2022, with two recoveries. Pierce denied straw purchasing but appeared to be flipping guns through various means. When shown a photographic lineup, Pierce also told agents that the defendant looked familiar. (*Id*.) Agents issued Pierce straw purchasing and firearms dealing warning letters. (*Id*.)

On June 17, 2022, agents interviewed the codefendant Hernandez. (*Id*. at ¶ 18.)

Hernandez admitted to purchasing approximately twenty firearms, stating he sold them all through private sales. (*Id*.) He later told agents that he purchased seven-to-ten firearms for the defendant. (Bates 043.) Regarding the private sales, Hernandez said that he advertised one firearm for sale online, and the defendant located buyers for the remainder. (PSR at ¶ 18.) Hernandez admitted that his May 4th and May 26th firearm purchases were for Alvarez-Olivares. (*Id.* at ¶ 19.) He also admitted to being paid $150 per firearm and $300 for the FN rifle. (*Id*. at ¶ 18-19.) Law enforcement has recovered two of the three additional firearms that Hernandez purchased for the defendant at different scenes. The FN rifle remains outstanding.

## II.    PRESENTENCE REPORT GUIDELINES CALCULATION

The United States agrees with the PSR's guidelines calculation of Level 15, Criminal History Category I, and 18–24 months of imprisonment, following adjustments for the number of firearms, role, and acceptance of responsibility. (*Id*. at ¶ 28, 30, 34.) The PSR recommends a 60-month term of probation. (*Id*. at p. 15.)

## III.    ANALYSIS

The United States opposes any variance below the guidelines range and recommends that the Court sentence the defendant to eighteen months' imprisonment. This recommendation is appropriate for several reasons. First, the defendant's conduct in this offense warrants such a sentence. The defendant actively recruited others to purchase firearms for him so he could resell them at a premium to those who likely could not purchase firearms for themselves. There is no legitimate purpose for such activity, which only serves to arm criminals, drug dealers, and the like. The defendant's internet searches for obliterating and filing serial numbers indicate that he was aware of this illicit purpose. The PSR appropriately adds two levels to the defendant's sentencing range for his role as a leader in this activity. (*Id*. at ¶ 30.)

Second, the defendant is not similarly situated to Hernandez and other initial firearm purchasers. This is due to the defendant's culpable mental state, as well as the overall volume of his conduct. While the codefendant and initial purchasers were somewhat

insulated from the criminal end users, this defendant seemingly dealt directly with them, as evidenced by his undercover sales. When coupled with the defendant's price premium and internet searches, this shows an element of knowledge, as opposed to recklessness on the part of the initial purchasers.

Further, although the defendant is being held responsible for ten firearms, the number of firearms he trafficked is possibly significantly higher. For instance, agents located a conversation on the defendant's phone soliciting a straw purchase of twenty Glock firearms. (*Id*. at ¶ 9.) And while initial firearm purchasers execute ATF Form 4473, no such record exists when those firearms are later trafficked to criminals illegally. Thus, although the exact number of firearms this defendant trafficked cannot readily be determined, it is at least significantly more than the codefendant and other initial purchasers mentioned in the PSR. Accordingly, this Court should not treat him similarly.

Finally, the government's recommended sentence is in line with other defendants who were legitimately similarly situated. According to the Judiciary Sentencing Information (JSIN), from 2018 to 2022, there were 816 defendants who were sentenced under USSG § 2K2.1 with a Total Offense Level of 15 and Criminal History Category of I. (*See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.) Of those 816, 680 defendants were sentenced to prison, for an average length of 16 months and median length of 18 months. (*Id*.) Thus, the government's recommended sentence accords with the sentences imposed for defendants convicted of similar conduct.

///

///

///

///

- 4 -

## IV.    CONCLUSION

The defendant solicited straw purchasers and profited from illegally trafficking firearms. The defendant did this, in part, to fuel a cocaine addiction. The sentencing guidelines account for the defendant's lack of criminal history, which does not justify a further variance to probation. Accordingly, the government recommends that this Court sentence the defendant to eighteen months in prison, followed by supervised release.

Respectfully submitted this 17th day of July, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Patrick E. Chapman*
PATRICK E. CHAPMAN
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the foregoing date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

*Brett Turley, Attorney for Defendant*

*/s/ J. Brown*
U.S. Attorney's Office